IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COREY EGNER, #S14263, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-cv-1213-RJD |
| | ) |
| JEFFREY DENNISON, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendant Bettis' Motion for Summary Judgment (Doc. 32). Plaintiff filed a Response (Doc. 41). As explained further, Defendant's Motion is GRANTED.

**BACKGROUND**

Plaintiff Egner, an inmate within the Illinois Department of Corrections, originally filed suit along with two other inmates in SDIL Case No. 19-cv-482 on April 30, 2019.[1] In their Complaint, Plaintiffs alleged that inmates placed on crisis watch at Shawnee Correctional Center ("Shawnee") suffered unconstitutional conditions of confinement. The windows were broken in the crisis watch cells, causing extreme hot/cold temperatures. The lights in their cells were never turned off. There was human excrement on the walls, mattresses, and floors. The Complaint further alleged that Plaintiff Egner qualified for the designation of "SMI" (serious mental illness) from 2016-2018, and mental health professionals improperly determined he no longer qualified

---

[1] Plaintiffs first filed suit in the Northern District of Illinois, and the Court transferred their suit to this Court.

for the SMI designation in 2019 (SDIL Case No. 19-cv-482, Doc. 1, p. 5, 8).  Plaintiffs also alleged that inmates on crisis watch received inadequate mental health treatment due to understaffing issues.  Plaintiffs sued employees of the Illinois Department of Corrections ("IDOC) and Wexford Health Sources, Inc. (a private contractor that provides healthcare to inmates within IDOC).

On May 10, 2019, the Court issued an Order warning the three plaintiffs of potential negative consequences related to group litigation (SDIL Case No. 19-cv-482, Doc. 10).  The Court gave the three plaintiffs the opportunity to withdraw from the case (or have their claims severed) without having to pay a filing fee for Case No. 19-cv-482 (*Id*.).  Plaintiff Egner submitted a pleading to the Court on May 28, 2019 that stated he wished to remain as a plaintiff in the group lawsuit (SDIL Case No. 19-cv-482, Doc. 23).   On that same date, Plaintiff Egner filed a notice informing the Court that he had transferred from Shawnee Correctional Center to Pinckneyville Correctional Center (SDIL Case No. 19-cv-482, Doc. 22).

Pursuant to 28 U.S.C. §1915A, the Court conducted a threshold review of the Complaint in Case No. 19-cv-482 and determined Plaintiffs failed to plead a cognizable claim (SDIL Case No. 19-cv-482, Doc. 37).  Plaintiffs were granted leave to file an amended complaint. (*Id*.).  On September 19, 2019, Plaintiff Egner filed a motion to sever his claims (SDIL Case No. 19-cv-482, Doc. 39). He also filed his First Amended Complaint, which named Defendant Bettis as a mental health professional who authorized his placement in an unsanitary and unsafe crisis watch cell. He further alleged that Defendant Bettis falsified his records to make it appear as though he was receiving appropriate mental health treatment, but she spent less than five minutes at a time with him.   Finally, he alleged that Defendant Bettis improperly changed his SMI designation in 2019.  Following a threshold review pursuant to 28 U.S.C. §1915A, Plaintiff's claims against Defendant

Bettis proceeded on the following counts:

>Count 1:  Eighth Amendment deliberate indifference claim for subjecting Plaintiff to unconstitutional conditions of confinement.
>
>Count 2:  Eighth Amendment claim for deliberate indifference to Plaintiff's serious mental health needs.

The Court found that Plaintiff's allegation against Defendant Bettis regarding the SMI designation did not sufficiently state a cognizable claim.

Defendant Bettis filed the instant motion, contending that Plaintiff failed to exhaust his administrative remedies prior to filing suit. Defendant points to Plaintiff's Grievance #2019-04-128 that Plaintiff submitted at Shawnee on April 15, 2019 and then appealed to the Administrative Review Board (Doc. 32-5). The Administrative Review Board ("ARB") issued a decision on Grievance #2019-04-128 on August 6, 2019-more than three months after Plaintiff filed suit in SDIL Case No. 19-cv-482.

In his written Response to Defendant Bettis' Motion for Summary Judgment, Plaintiff "concedes the facts" but claims that he feared retaliation from Defendants. Plaintiff's First Amended Complaint includes a retaliation claim against Defendant Bernard. On March 14, 2019, Plaintiff submitted Grievance #2019-03-145 regarding Defendant Bernard at Shawnee (Doc. 32-17). In the grievance, Plaintiff claimed that Defendant Bernard acted unprofessionally when Plaintiff described his medical conditions. Plaintiff further claimed that he feared he may have a seizure in his cell and Defendant Bernard would "leave him to die." According to the grievance officer's response, Defendant Bernard denied the allegations. In his First Amended Complaint, Plaintiff alleges that Defendant Bernard struck him on May 2, 2019 and prepared a false disciplinary report regarding Plaintiff. Plaintiff further alleges that Defendant Bernard retaliated against Plaintiff for using the prison grievance process.

### *Pavey* Hearing

On February 23, 2021, the Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Plaintiff testified that he submitted a grievance in April 2019 regarding his mental health treatment and conditions on crisis watch, and then he "proceeded to jump" to the Court because he hoped to eliminate the threats being made against him for using the grievance process and potential retaliation. Plaintiff explained that after he submitted a grievance against Defendant Bernard, Bernard retaliated against Plaintiff on multiple occasions when the crisis watch inmates took showers. Plaintiff testified that Bernard excessively cuffed him and slammed him against the showers and said, "this is what happens to people who write grievances on me." Plaintiff spoke with Internal Affairs about this situation and submitted an emergency grievance to Warden Dennison. Plaintiff testified that if he had been represented by counsel at the *Pavey* hearing, he could have subpoenaed other inmates to testify regarding the threats of retaliation inmates faced for utilizing the grievance process at Shawnee.

Plaintiff also feared that if he submitted a grievance regarding his mental health treatment, there would be a disruption in his mental health services. He recounted an incident where a mental health professional made a seemingly arbitrary decision to deny him the ability to read a book while on crisis watch. He testified that the mental health professionals would know he submitted a grievance about them because they would get a chance to respond. When he submitted the April 15, 2019 grievance regarding his mental health treatment, he did not submit it as an emergency.

Defendant Bettis called Chalene Hale to testify. Ms. Hale is a correctional counselor and litigation coordinator at Pinckneyville Correctional Center. She testified regarding her familiarity with Plaintiff's counseling summary, which reflects that Plaintiff submitted seven grievances at

Shawnee Correctional Center in March 2019. Additional entries on the cumulative counseling summary reflect that Plaintiff submitted four grievances in April 2019, including the April 15, 2019 grievance that describes Plaintiff's mental health treatment (or lack thereof).

## Legal Standards

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

***Exhaustion Requirements***

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies

have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident or problem to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). The grievance must contain the following:

> ….factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provThe ision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.870(b).

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and

(e).  Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer.  *Id.* § 504.840.  If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender.  *Id.*  Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility.  *Id.* at § 504.870.

## Discussion

Defendant's summary judgment motion raises two issues for the Court to consider.  The first issue is whether Plaintiff complied with the PLRA's requirement that an inmate must exhaust administrative remedies prior to filing suit.  Plaintiff exhausted his administrative remedies against Defendant Bettis after filing SDIL Case No. 19-cv-482.  The PLRA does not permit a "sue first, exhaust later" approach. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020).

However, when an inmate files an amended complaint that raises a new claim against a new defendant, the inmate may proceed if he exhausted his administrative remedies after filing his original complaint, but before he filed the amended complaint.  *Id.*  That is not the case here. Plaintiffs' original complaint in Case No. 19-cv-482 alleged that IDOC and Wexford employees

subjected inmates on crisis watch at Shawnee to unconstitutional conditions of confinement. Plaintiff further alleged that inmates on crisis watch received inadequate mental health treatment. Plaintiff makes those same allegations against Defendant Bettis in the First Amended Complaint. Plaintiff's alleged interactions with Defendant Bettis occurred prior to April 30, 2019 (the date Plaintiffs filed the original Complaint), as evidenced by the allegations in the original Complaint and Grievance No. 2019-04-128 (submitted by Plaintiff on April 15, 2019).[2]  Consequently, the PLRA required Plaintiff to exhaust his administrative remedies against Defendant Bettis on or before April 30, 2019.

The Court acknowledges that this issue is somewhat complicated because Plaintiff is now proceeding in a different case than the one in which he filed a Complaint on April 30, 2019. However, Plaintiff never sought dismissal of his claims in Case No. 19-cv-482.  Apart from the action it took pursuant to threshold review, the Court never dismissed Plaintiff's claims in Case No. 19-cv-482.  Upon his request, and for his convenience, the Court simply severed Plaintiff's claims into the current case.

The next issue is whether administrative remedies were available to Plaintiff.  An inmate is only required to exhaust the administrative remedies that are available to him.  *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002).  If a prison official engages in "affirmative misconduct" to prevent an inmate from submitting grievances, then administrative remedies are not available to that inmate. *See id*. at 834-35.

Plaintiff testified that he feared retaliation or a disruption in his mental health services if he submitted grievances against Defendants from March-May 2019.  At the hearing, Plaintiff

---

[2] Plaintiff does not identify Defendant Bettis by name in the grievance or in the original Complaint but refers to mental health professionals collectively.

argued that if he had an attorney he could have presented witnesses to corroborate his fears of retaliation. Plaintiff's lack of witnesses (apart from himself) at the *Pavey* hearing does not affect the Court's decision. The Court has no reason to discredit Plaintiff's testimony regarding the threats of retaliation or disruption in mental health services. Regardless, these threats did not render the grievance process unavailable to Plaintiff. He continued to utilize the grievance process during this time. His counseling summary indicates that he submitted ten grievances at Shawnee in March-April 2019. Plaintiff testified that he submitted a grievance regarding his mental health services on April 15, 2019. Instead of completing the grievance process, Plaintiff filed suit on April 30, 2019. Plaintiff testified that he believed filing suit on that date might provide him protection against retaliation. This belief does not create an exception to the PLRA's exhaustion requirement.

## CONCLUSION

Defendant Bettis' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 32) is GRANTED. Counts 1 and 2 against Defendant Bettis are dismissed without prejudice. The Clerk of Court is directed to enter judgment accordingly at the close of the case. Plaintiff's claims against Defendants Bernard, Justice, and Dennison remain pending.

**IT IS SO ORDERED.**

**DATED: February 24, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**